UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CLEARWATER INSURANCE COMPANY and EVEREST REINSURANCE COMPANY, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CASE NO. 4:16CV195 HEA ) |
| THE DOE RUN RESOURCES CORPORATION f/k/a ST. JOE MINERALS CORPORATION, AIU INSURANCE COMPANY, FIRST STATE INSURANCE COMPANY, GOVERNMENT EMPLOYEES INSURANCE COMPANY, NORTHBROOK INSURANCE COMPANY, and ZURICH INSURANCE COMPANY, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant the Doe Run Resources Corporation's (Doe Run) Motion to Stay, [Doc. No. 12], Motion to Dismiss Plaintiff's Second Amended Complaint, [Doc. No. 25], and Motion to Dismiss Cross-Claims and Counterclaims by Insurers Allstate Insurance Company, AIU Insurance Company, First State Insurance Company, and Government Employees Insurance Company for Lack of Jurisdiction and in Deference to Doe Run's Pending State Court Action, [Doc. No. 66]. The respective parties have filed oppositions to these motions.

**Facts and Background**

Plaintiffs' Second Amended Complaint states that this is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq.* In this action, Plaintiffs seek a determination as to the rights and obligations of the parties in connection with certain insurance policies issued by Prudential Reinsurance Company ("Prudential Re") and Gibraltar Insurance Company ("Gibraltar") to St. Joe Minerals Corporation ("St. Joe Minerals") in connection with an environmental claim arising from St. Joe Minerals' operations in St. Francois County, Missouri and more particularly known as the OU1 remediation (the "Underlying Claim").

The Court's jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332. Plaintiff Clearwater is a corporation organized and existing under the laws of Delaware. Clearwater is an insurer with its principal place of business in New Hampshire. Plaintiff Everest is a corporation organized and existing under the laws of Delaware. Everest is an insurer with its principal place of business in New Jersey.  Defendant Doe Run is a New York corporation, with its principal place of business in Missouri. Defendant AIU Insurance Company ("AIU") was at all pertinent times a corporation organized under the laws of New York, with its principal place of business in New York. Defendant First State Insurance Company ("First State") was at all pertinent times a corporation organized under the laws of

Connecticut, with its principal place of business in Massachusetts. Defendant Government Employees Insurance Company ("GEICO") was at all pertinent times a corporation organized under the laws of Maryland, with its principal place of business in Maryland. Defendant Granite State Insurance Company ("Granite") was at all pertinent times a corporation organized under the laws of Pennsylvania, with its principal place of business in New York. Defendant Northbrook Insurance Company ("Northbrook") was at all pertinent times a corporation organized under the laws of Illinois, with its principal place of business in Illinois. Defendant Zurich Insurance Company ("Zurich") was at all pertinent times a corporation organized under the laws of Illinois, with its principal place of business in Illinois.

Plaintiffs' Second Amended Complaint alleges the following facts:

Prudential Re issued certain excess liability policies to St. Joe Minerals under which Doe Run has made a claim for coverage for the Underlying Claim (the "Prudential Re Policies"), as follows:

**Policy Number Policy Period**

DXCDX0060 1/1/77 – 5/1/78

DXCDX0373 9/16/77 – 5/1/78

DXCDX0928 5/1/78 – 9/10/78

DXCDX0929 5/1/78 – 9/10/78

DXCDX1112 9/10/78 – 2/4/79

DXCDX1113 9/10/78 – 2/4/79

Gibraltar issued certain excess liability policies to St. Joe Minerals Corporation under which Doe Run has made a claim for coverage for the Underlying Claim (the "Gibraltar Policies"), as follows:

**Policy Number Policy Period**

GMX0017 2/4/79 – 2/4/80

GMX0018 2/4/79 – 2/4/80

GMX00473 2/4/80 – 2/4/81

GMX00474 2/4/80 – 2/4/81

Defendants AIU, First State, GEICO, Granite, Northbrook, and Zurich (collectively "Defendant Insurers") issued certain excess liability policies to St. Joe Minerals that are potentially applicable to the Underlying Claim.

Defendant Zurich provided St. Joe Minerals with primary liability insurance, including without limitation the following policy numbers:

a. Policy No. 81-49-527, issued to St. Joseph Lead Company for the policy period of December 31, 1959 to December 31, 1960;

b. Policy No. 82-64-308, issued to St. Joseph Lead Company for the policy period of December 31, 1960 to December 31, 1961;

c. Policy No. 83-50-273, issued to St. Joseph Lead Company for the policy

period of December 31, 1961 to December 31, 1962;

d. Policy No. 84-13-131, issued to St. Joseph Lead Company for the policy period of December 31, 1962 to December 31, 1963;

e. Policy No. 84-87-501 issued to St. Joseph Lead Company for the policy period of December 31, 1963 to December 31, 1964;

f. Policy No. 85-50-737 issued to St. Joseph Lead Company for the policy period December 31, 1966 to December 31, 1967;

g. Policy No. 85-83-917, issued to St. Joseph Lead Company for the policy period December 31, 1967 to December 31, 1968;

h. Policy No. 85-96-343 issued to St. Joseph Lead Company for the policy period of December 31, 1968 to February 4, 1969;

i. Policy No. 86-69-900 issued to St. Joe Minerals Corporation for the policy period of March 15, 1971 to December 31, 1973;

j. Policy No. 87-52-260, with the policy period of at least December 31, 1973 to February 4, 1978;

k. Policy No. 88-83-748, with the policy period of at least February 4, 1978 to February 4, 1979;

l. Policy No. 88-87-314, with the policy period of at least February 4, 1979 to February 4, 1980;

m. Policy No. 89-11-952, with the policy period of at least February 4, 1980 to

February 4, 1982;

n. Policy No. 80-60-784 issued to St. Joe Minerals Corporation for the policy period of February 4, 1982 to February 4, 1983;

o. Policy No. 80-72-010 issued to St. Joe Minerals Corporation for the policy period of February 4, 1983 to February 4, 1984; and

p. Policy No. 32-51-983-00 issued to St. Joe Minerals Corporation for the policy period of February 4, 1984 to February 4, 1985;

AIU and Granite State, issued to St. Joe certain excess liability insurance policies that are potentially applicable to the Underlying Claim asserted against Doe Run including without limitation policy numbers:

a. Policy No. SCLD 80-93308, with the policy period of at least August 28, 1977 to August 28, 197;

b. Policy No. 75-100726, with the policy period of at least August 28, 1978 to February 4, 1980;

c. Policy No. 75-101807, with the policy period of at least February 4, 1980 to February 4, 1981;

d. Policy No. 75-102023, with the policy period of at least February 4, 1981, to February 4, 1982; and

e. Policy No. 75-102128, with the policy period of at least February 4, 1982, to February 4, 1983

First State issued to St. Joe certain excess liability insurance policies that are potentially applicable to the Underlying Claim asserted against Doe Run including without limitation policy numbers:

a. Policy No. 921375, with the policy period of at least August 5, 1974 to February 4, 1976;

b. Policy No. 924494, with the policy period of at least February 4, 1977 to February 4, 1978;

c. Policy No. 926349, with the policy period of at least February 4, 1978 to March 28, 1979;

d. Policy No. 946115, with the policy period of at least February 4, 1980 to February 4, 1981;

e. Policy No. 930898, with the policy period of at least February 4, 1981 to February 4, 1982;

f. Policy No. 948237, with the policy period of at least February 4, 1981 to February 4, 1984; and

g. Policy No. 933243, with the policy period of at least February 4, 1982 to February 4, 1983.

Northbrook issued to St. Joe certain excess liability insurance policies that are potentially applicable to the Underlying Claim asserted against Doe Run including without limitation policy numbers:

a. Policy No. 63300085, with the policy period of at least March 11, 1975 to February 4, 1978;

b. Policy No. 63005618, with the policy period of at least March 28, 1979 to February 4, 1980;

c. Policy No. 63006443, with the policy period of at least February 4, 1980 to February 4, 1981;

d. Policy No. 63007653, with the policy period of at least February 4, 1981 to February 4, 1982; and

e. Policy No. 63007654, with the policy period of at least February 4, 1981 to February 4, 1982.

GEICO issued to St. Joe certain excess liability insurance policies that are potentially applicable to the Underlying Claim asserted against Doe Run including without limitation policy numbers:

a. Policy No. GXU30121, with the policy period of at least February 4, 1982 to February 4, 1983; and.

b. Policy No. GXU30120, with the policy period of at least February 4, 1982 to February 4, 1983.

Since 1892, Doe Run and/or its alleged predecessors in interest have, at various times, owned, operated and/or supervised operations of lead smelting

and mining operations throughout St. Francois County, Missouri ("Lead Operations"). In the normal course of operations, such Lead Operations routinely produced toxic lead emissions and by-products, which were emitted and/or deposited throughout St. Francois County, Missouri by Doe Run and/or its predecessors in interest.

In 2006 the United States Environmental Protection Agency ("the USEPA") issued a Unilateral Administrative Order to Defendant, The Doe Run Resources Corporation, to conduct certain environmental remediation of the Big River Mine Tailings Site located in St. Francois County, Missouri ("the Site").

The USEPA designated four Operable Units ("OUs") that defined the remedial work that was to be conducted at the Site.

On September 30, 2011, the USEPA issued a unilateral Record of Decision regarding OU1 of the Site. OU1 consists primarily of the remediation of residential properties and high child exposure areas exceeding lead levels of 400 parts per million ("ppm") in St. Francois County. Residential properties include properties that contain single and multi-family dwellings, apartment complexes, vacant lots in residential areas, schools, daycare centers, playgrounds, parks and green ways. The cleanup action is one part of the USEPA's overall efforts to cleanup environmental contamination resulting from historic lead mining operations at the Site.

The selected remedy for OU1 in the 2011 Record of Decision included the

excavation of residential soil until lead concentrations are below 400 ppm in the top 12 inches, or below 1,200 ppm below 12 inches down to 24 inches below ground surface, transportation of contaminated soil to on-site soil repositories, replacement of contaminated soil with clean backfill and vegetative cover and institutional controls. The cost of the selected remedy in the Record of Decision was estimated at $130.3 million.

In the 2011 Record of Decision, the USEPA identified Doe Run as one of the potentially responsible parties that contributed hazardous substances at the Site.

Doe Run claims that it is the successor to St. Joe Minerals and has rights under the Prudential Re Policies and the Gibraltar Policies issued to St. Joe Minerals (collectively, the "Plaintiffs' Policies").

By letter dated September 29, 2015, Doe Run notified Plaintiffs that its other liability insurance had been exhausted and requested coverage under the Plaintiffs' Policies for Doe Run's costs related to the OU1 remediation at the Site (the "Underlying Claim"). In its September 29, 2015 letter, Doe Run also provided Plaintiffs with copies of the 2011 Record of Decision and 2013 Special Notice Letter from the USEPA. Those documents had not been previously provided to Plaintiffs by Doe Run.

Plaintiffs responded to Doe Run's request for coverage by letter dated October 17, 2015. Plaintiffs requested that Doe Run provide it with additional

information it needed in order to make a coverage determination and reserved all rights.

After some, but not all, additional information was provided, Plaintiffs again wrote to Doe Run on December 17, 2015, reiterating its need for information and providing a preliminary coverage position based on the information received as of that date under a complete reservation of rights. The letter explained that certain terms, conditions and exclusions found in the Plaintiffs' Policies (including those quoted in the letter) may preclude coverage for the Underlying Claim and again requested additional information and documentation. To date, Doe Run has provided some, but not all, of the requested information and documentation.

On January 22, 2016, Doe Run requested Plaintiffs' agreement with a proposed settlement of the Underlying Claim, asserting that it would hold Plaintiffs liable if the "settlement opportunity was missed because of any improper failure to acknowledge or provide coverage."

Plaintiffs responded on January 26, 2016, reiterating the coverage issues previously raised and its requests for information and reserving all rights under the Plaintiffs' Policies.

Plaintiffs contend that there is no indemnity obligation under the Plaintiffs' Policies for the Underlying Claim, and therefore they are not required to pay for the indemnity of Doe Run with respect to the OU1 remediation.

Plaintiffs seek a declaration that they have no obligation, under the Plaintiffs' Policies, to indemnify Doe Run for the Underlying Claim.

Further, Plaintiffs seek a declaration that if they are obligated to provide coverage for Doe Run, they are entitled to contribution against the Defendant Insurers.

## Discussion

The gist of Doe Run's Motion to Stay, Motion to Dismiss the Second Amended Complaint and the Motion to Dismiss Cross-Claims and Counterclaims is its belief that this matter should be litigated in the State Court of Missouri.

**Motion to Stay**

Subsequent to the filing of this action, Doe Run filed an action in the Circuit Court of St. Louis County, Missouri. Doe Run argues that the later filed State Court action will ultimately resolve the issues regarding the insurance coverage for more than just the OU1 site. Thus, it argues that because there is a parallel action in the state court, this action should be stayed.

"Suits are parallel if the substantially same parties litigate substantially the same issues in different forums.... As a functional matter, though, state proceedings are parallel if they involve the same parties or if the same parties may be subject to the state action and if the state action is likely to fully and satisfactorily resolve the dispute or certainty at the heart of the federal declaratory judgment action."

*Lexington Ins. Co. v. Integrity Land Title Co., Inc.*, 721 F.3d 958, 968 (8th Cir. 2013) (quotations omitted).

This declaratory judgment is not a parallel proceeding to the St. Louis County lawsuit. Zurich is not a party to the State suit, nor can it be, as any disputes between Zurich, the primary insurer and Doe Run must be litigated in a different forum, California. Moreover, the coverage issues in this lawsuit are not pending before the St. Louis County court. In this declaratory judgment action Plaintiffs have asked the Court to determine whether they owe Doe Run coverage under the terms of the applicable insurance policies. While this determination may necessitate factual inquiries similar to those being made in the St. Louis County action, the fact that there may exist a few overlapping factual issues does not make this a parallel action. *See id.* at 970 ("Resolution of Fidelity's tort and contract claims against Integrity would demand no interpretation of the E & O policy nor clarify for Lexington whether it owed a defense to Integrity in Fidelity's two lawsuits."). Resolution of the Zurich primary policies' coverage obligations, may give rise to differing results regarding Plaintiffs and the Defendant Insurers. Given the fundamentally distinct parties and distinct issues raised in the lawsuits, they are not parallel proceedings.

Even if the lawsuits are not parallel proceedings, the Court may still choose to stay the case. The Eighth Circuit has identified six *Scottsdale* factors to apply to determine whether a stay is appropriate in the absence of a parallel proceeding:

(1) [W]hether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue;

(2) [W]hether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the [federal] proceeding;

(3) [T]he strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts;

(4) [W]hether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending;

(5) [W]hether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and

(6) [W]hether the declaratory judgment action is being used merely as a device for procedural fencing – that is, to provide another forum in a race for res judicata or to achiev[e] a federal hearing in a case otherwise not removable. *Scottsdale Ins. Co. v. Detco Industries, Inc.*, 426 F.3d 994, 998 (8th Cir. 2005).

The *Scottsdale* factors do not weigh in favor of the requested stay in this case. Factors one, two, and four do not support a stay of the case. The declaratory

judgment sought would clearly be useful for clarifying whether Plaintiffs and the other insurers owe Doe Run any coverage. Given the differing parties and legal questions it is uncertain that coverage could be more efficiently litigated in state court. *See id.* at 971(resolution of the coverage issues in state court was neither certain nor efficient).

Factor three favors denial of the stay. Although Doe Run argues that the state court has a unique interest in presiding over the coverage dispute. As Plaintiffs correctly argue, the US Environment Protective Agency Order is at the heart of the OU1 claim. The parties are diverse and the amount in controversy exceeds $75,000, which satisfies the requirements for federal diversity jurisdiction. Absent some compelling interest of the state of Missouri in litigating this action, the lawsuit's relation to the pending declaratory action in St. Louis County is insufficient to conclude that factor three weighs in favor of a stay.

Factor five is neutral. While there is a significant distinction between the declaratory judgment action in this Court and the state court, *i.e.*, the inclusion in this Court of *all* insurers, including the primary insurer, Zurich, which may be determinative of the other insurers' obligations, the state court has denied Plaintiffs' motion to stay that action.

With respect to the sixth factor, the Court is unpersuaded that Plaintiffs have engaged in procedural fencing or maneuvering. The representations presented to

the Court at this time indicate that Plaintiffs are proceeding in this Court in due course after having had communications with Doe Run prior to instituting this action.

**Motions to Dismiss**

Doe Run seeks dismissal of this action in favor of the state court action. As discussed, *supra*, in relation to the Motion to Stay, Doe Run's Motion is unpersuasive.

Doe Run also seeks dismissal for lack of jurisdiction, arguing that the parties should be realigned such that it is the Plaintiff against all of the insurers, including the current Plaintiffs. As both Plaintiffs and the Defendant insurers point out, Doe Run's position has been previously presented and rejected by this Court.

> "Complete diversity of citizenship exists where no defendants hold citizenship in a state where any plaintiff holds citizenship." *Id.* "To sustain diversity jurisdiction there must exist an 'actual,' 'substantial,' controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side." *City of Indianapolis v. Chase Nat'l Bank of City of New York,* 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (internal citations omitted).
>
> The alignment of parties in the pleadings as plaintiffs and defendants is not conclusive in determining whether complete diversity of citizenship exists. *Universal Underwriters Ins. Co. v. Wagner,* 367 F.2d 866, 870 (8th Cir.1966) (*"Wagner"*). It is the duty of the federal courts to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis,* 314 U.S. at 69 (quoted case omitted)).
>
> The parties' positions and resolution of the instant motion turn on the proper test to be applied in determining whether realignment should occur: the "principal purpose" test advocated by Doe Run, or the "actual and

substantial conflict" test advocated by Hartford and Zurich. Both tests stem from language in the Supreme Court's seminal decision in *City of Indianapolis.* Under the principal purpose test, the existence of a controversy between parties pleaded as adverse is determined on the basis of the primary purpose of the suit, and the parties must be realigned if there is no adversity between parties with respect to the primary issue in dispute. *See* 15 James Wm. Moore, et al., *Moore's Federal Practice* § 102.20[3] (3d ed.2008). Under the actual and substantial conflict test, realignment of parties is not required if there is any actual and substantial conflict existing between those parties, regardless of whether it concerns the primary issue in dispute. *Id.*

The lower courts are divided in their application of the two tests. *Id.* The Eighth Circuit adopted the actual and substantial conflict test in *Wagner,* 367 F.2d at 870 (referring to the "principal purpose of the suit" but requiring only a "substantial controversy" on any issue between the parties). *See* 15 *Moore's Federal Practice* § 120.20[4]; 20 Charles Alan Wright & Mary Kay Kane, *Federal Practice & Procedure* § 32 (2002). *Wagner* was an action by an insurer in which the insured and another insurer with a policy covering the insured were sued as defendants. The Eighth Circuit held that although the defendant insurer shared an interest with the plaintiff insurer in avoiding liability to the insured, this did not require realignment of parties because there were issues between the plaintiff and defendant insurers as to the duty to insured and which insurer was liable. *Id.,* 367 F.2d at 870.

District courts in this circuit have recognized that the actual and substantial conflict test is controlling in the Eighth Circuit. *See JBB Invs. LLC v. Fazoli's Franchising Sys. LLC,* 2008 WL 2568468, *3 (E.D.Ark. June 25, 2008) ("The Court must determine whether an actual controversy exists between opposing parties, regardless of whether the controversy exists on a primary or non-primary issue."; citing *Wagner); see also EOG Resources, Inc. v. Badlands Power Fuels, LLC,* 2009 WL 424431, *5 (D.N.D. Feb.18, 2009) (realignment of parties was not appropriate where an actual conflict existed between the plaintiff and one of several defendants; both sought to be contractually indemnified from claims brought against them, but a conflict existed because the defendant also sought indemnification from the plaintiff regardless of indemnity provisions potentially enforceable against other defendants).

> Thus, the Court must determine whether an actual and substantial conflict exists between Hartford and Zurich. The pleadings establish that such a conflict does exist in this case. Hartford and Zurich have a genuine dispute about the existence and extent of their contribution obligations. Zurich has already made payments in connection with some of the Underlying Claims and has filed a counterclaim against Hartford seeking contribution for those payments, as well as any further indemnity costs for which it may be liable. Hartford is seeking a declaration that it has no duty to pay any contribution to Zurich. An actual and substantial controversy therefore exists between Hartford and Zurich and realignment of the parties is not required.

*Hartford Acc. & Indem. Co. v. Doe Run Res. Corp.*, No. 4:08CV1687CAS, 2009 WL 1067209, at *1–3 (E.D. Mo. Apr. 21, 2009).

The same analysis applies in this action. Plaintiffs have filed claims against Doe Run and the Insurer Defendant. The Insurer Defendants have asserted counterclaims for contribution against Plaintiffs. An actual and substantial controversy exists between Plaintiffs and the Insurer Defendants. Realignment of the parties is not required.

Doe Run also seeks dismissal on the grounds that the Counter-claims and crossclaims are not ripe. Insurer Defendants are correct that Doe Run lacks standing to assert the Counterclaims for contribution should be dismissed. The counterclaims are not brought against Doe Run.

## Conclusion

Based upon the foregoing, Doe Run's Motions are without basis and will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Doe Run's Motion to Stay, [Doc. No. 12], is **denied**.

**IT IS FURTHER ORDERED** that Doe Run's Motion to Dismiss Plaintiff's Second Amended Complaint, [Doc. No. 25], is **denied**.

**IT IS FURTHER ORDERED** that Doe Run's Motion to Dismiss Cross-Claims and Counterclaims by Insurers Allstate Insurance Company, AIU Insurance Company, First State Insurance Company, and Government Employees Insurance Company for Lack of Jurisdiction and in Deference to Doe Run's Pending State Court Action, [Doc. No. 66], is **denied**.

Dated this 3rd day of March, 2017.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE